UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-23449-BLOOM/Louis

JULIE FERRO,

    Plaintiff,

v.

DOCTORS HEALTHCARE
PLANS, INC., *et al*.

    Defendants.

_____

**DEFENDANTS' MOTION TO QUASH AND/OR MOTION FOR PROTECTIVE ORDER REGARDING SUBPOENAS ISSUED TO EMPLOYEES OF DOCTORS HEALTHCARE PLANS, INC.**

Defendants Doctors HealthCare Plans, Inc. ("DHCP") and Rafael Perez ("R. Perez") (together, the "Defendants"), pursuant to Federal Rules of Civil Procedure 26(c) and 45, and Southern District of Florida Local Rule 26.1(h)(3), respectfully move this Court for entry of an order quashing subpoenas issued by Plaintiff Julie Ferro to DHCP employees Daniel Perez, Janelle Perez, Martin Perez, Andres Prieto, and Elba Reyes.[1] Each of these subpoenas is impermissibly vague and therefore overbroad, is duplicative of discovery requests previously served on Defendants, and seeks information that is irrelevant to any of the claims or defenses at issue in this case. In support of this Motion, Defendants state as follows:

**A.    BACKGROUND**

In this lawsuit, Ferro asserts a single count of retaliation under the Family Medical Leave Act ("FMLA") against both her former employer DHCP and its Chief Executive

---

[1] These subpoenas are attached hereto as **Composite Exhibit 1** (the "Employee Subpoenas").

1

4846-3628-6946

Officer, and Ferro's former supervisor, Rafael Perez. *See generally* Am. Compl. [ECF No. 10]. As alleged in the Amended Complaint, Ferro was employed as DHCP's Vice President of Provider Relations between 2017 and her termination in June 2020. *Id.* at ¶¶ 2, 17. While Ferro was terminated as a result of her unsatisfactory job performance, including making an unauthorized, several-hundred-thousand dollar settlement offer to a DHCP network provider[2]—she claims that her termination was not due to performance-related reasons, but was in fact retaliation for her seeking FMLA leave.[3] *Id.* at ¶¶ 117-121. DHCP disputes this claim in its entirety.

In addition to written discovery directed to both DHCP and R. Perez, Ferro has issued subpoenas to five DHCP employees:

- **Daniel Perez** – D. Perez previously worked under Ferro in DHCP's Provider Relations department. He currently serves as DHCP's in-house counsel. He has never had supervisory authority over Ferro and is not in the "chain of command" as it relates to the requesting or granting of medical leave.
- **Janelle Perez** – J. Perez is an employee within DHCP's Network Development department. She has never had supervisory authority over Ferro and is not in the chain of command as it relates to the requesting or granting of medical leave.
- **Martin Perez** – M. Perez is DHCP's Chief Financial Officer. He has never had supervisory authority over Ferro and is not in the chain of command as it relates to the requesting or granting of medical leave.
- **Andres Prieto, MD** – Dr. Prieto is DHCP's Medical Director. He has never had supervisory authority over Ferro and is not in the chain of command as it relates to the requesting or granting of medical leave. Nor was he responsible for

---

[2] DHCP is a health-insurance company that specializes in Medicare Advantage plans. Accordingly, DHCP manages a network of healthcare providers across South Florida that provide various health-related services to DHCP's members. Ferro's role as the Vice President of Provider Relations largely centered on educating and in-servicing these network providers.

[3] Ferro never requested nor took medical leave of any sort during her employment at DHCP.

> diagnosing, evaluating, or otherwise treating the medical conditions of any DHCP employee, Ferro included.
>
> - **Elba Reyes** – Ms. Reyes is Rafael Perez's administrative assistant. She has never had supervisory authority over Ferro and is not in the chain of command as it relates to the requesting or granting of medical leave.

The subpoenas directed to each of these employees are identical in scope. Despite none of these DHCP employees ever having the responsibility to authorize any employment decisions made with respect to Ferro, including the granting of medical leave, each subpoena seeks:

> "personal text messages or any other electronic communications with anyone concerning the following subject-matter: Ms. Ferro's health or medical condition, job performance, compensation, separation of employment and her legal claims against Defendants detailed in the attached Amended Complaint."

*See* Employee Subpoenas. The Employee Subpoenas neither provide a relevant time period from which such communications are sought nor carve out any communications that these employees may have had with DHCP's counsel regarding these topic.

**B.   ARGUMENT**

As drafted, these subpoenas are impermissibly vague and therefore overbroad. But even if Ferro's subpoenas were more narrowly tailored, none of the employees from whom she seeks documents is able to provide information relevant to her claim for FMLA retaliation. Accordingly, each of these subpoenas should be quashed in their entirety.

Pursuant to Federal Rule of Civil Procedure 26(b), parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. *See* Fed. R. Civ. P. 26(b)(1). Rule 26, however, also protects those from whom discovery is sought against "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ.

3

P. 26(c)(1). The party making a motion for a protective order, however, must show that "good cause" exists for the court to issue such an order. *Id.* In addition to finding good cause, the court must also be satisfied that, on balance, the interests of the party seeking the protective order outweigh the interests of the opposing party. *See, e.g., McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989). Similarly, Rule 45 permits a court to quash or modify a subpoena if, among other things, the subpoena "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." *See* Fed. R. Civ. P. 45(c)(3)(A). Where, as here, the subpoena requests irrelevant or privileged information, the trial court is empowered to grant a party's request for protective order or to quash the subpoena. *See Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, 303 F.R.D. 673, 676 (S.D. Fla. 2014), *aff'd sub nom. Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co., Inc.*, No. 12-CV-81397-KAM, 2015 WL 11921411 (S.D. Fla. July 6, 2015) (citations omitted).

    **1. The Employee Subpoenas are impermissibly vague and thus overbroad.**

As a preliminary matter, as drafted, each of the Employee Subpoenas appears to seek every electronic communication that these employees have ever had with *anyone* related to Ferro. First, the request contains no limitations on the relevant time period. Ferro was employed at DHCP between approximately January 2017 and June 2020. *See* Am. Compl. at §§ 40, 105. But the subpoenas do not even suggest this as a temporal limit. Instead, they seek information related to Ferro's health, job performance, compensation, termination, and the instant lawsuit without bound, inclusive of any time between the present and whenever the subpoenaed employee purchased their respective mobile phones or registered their personal email accounts.

Second, the subpoenas impose no limitation as to the counterparty of the requested electronic communication. The Employee Subpoenas do not restrain the document requests to other employees within DHCP, network providers that may have registered complaints related to Ferro, or any other category of individuals that may arguably have information relevant to Ferro's claims or Defendants' defenses. Instead, any communications the subpoenaed employee may have had with *anyone* related to Ferro are fair game, irrespective of whether or not such individuals could or did have any role in the purported retaliatory conduct alleged in the Amended Complaint. As these document requests are directed at the DHCP employees in their personal capacity in their use of personal electronic communications instead of in their capacity as employees of DHCP using DHCP equipment, the Employee Subpoenas extend to any person the subpoenaed employee has ever had any form of electronic communication with.

Finally, even the categories of Communications sought by Ferro are not adequately defined to limit these subpoenas to documents within areas of interest pertinent to the instant lawsuit. For example, Ferro's claims of retaliation appear centered around two specific medical "conditions:" (1) an adverse drug reaction suffered by Ferro in late November/early December 2019; and (2) rheumatoid arthritis and the impacts thereof during the COVID-19 pandemic. *Id.* at ¶¶ 45-54; 69-102. But her document requests are not so limited, seeking all electronic communications related to Ferro's "health or medical condition." As phrased, it is impossible to know whether Ferro seeks communications related to the two claimed health issues described above or whether she intends to have the subpoenaed employees search for any text or email to any individual related to any health condition Ferro ever suffered. Indeed, none of the categories of communications requested by Ferro are sufficiently defined to permit

the subpoenaed employee to efficiently search for relevant documents or lodge objections to the more narrowly defined documents, if appropriate.

This failure to properly define the scope of the electronic communications sought, when combined with the subpoenas' failure to limit the counterparties to those communications, creates another, even more troublesome problem: the Employee Subpoenas would capture privileged intra-company communications between these individuals and DHCP's counsel, both in-house and external. Specifically, the subpoenas seek all electronic communications concerning Ferro's "legal claims against Defendants." Any such communications with either DHCP's in-house counsel D. Perez—himself a target of a Ferro subpoena—and the other subpoenaed employees would by definition be foreclosed from disclosure by the attorney-client privilege and work product doctrines. As would similar communications between these individuals and Defendants' outside counsel, or even communications with any other individuals related to or arising from communications from the Defendants' attorneys with respect to Ferro's lawsuit. *See, e.g., In re Denture Cream Products Liab. Litig.*, 2012 WL 5057844, at *13 (S.D. Fla. Oct. 18, 2012) ("[S]imply because a communication is made between two corporate employees, neither of whom are attorneys, that fact is not determinative of whether that communication primarily involves business advice rather than legal advice for purposes of the attorney-client privilege to that correspondence."). *In re Alexander Grant & Co. Litig.*, 110 F.R.D. 545 (S.D. Fla. 1986) (holding that attorney client privileged applied to intra-company communications where such communications were related to information requested by counsel for purposes of providing legal advice).

## 2. The Employee Subpoenas seek information already requested in written discovery directed to the Defendants.

In addition, to the extent that there is discoverable information to be found within the Employee Subpoenas' overbroad requests, such information has already been captured by written discovery requests directed to the Defendants. The following are just a sample of the document requests sent to Defendants that generally mirror the information sought by Ferro through the Employee Subpoenas:

- **Request No. 2** – Produce all documents, communications and/or ESI related to promotions Plaintiff received and/or was considered for during her employment at Defendants;

- **Request No. 3** – Product all documents, communications and/or ESI related to, supporting or contradicting the allegations in the Complaint;

- **Request No. 4** – Produce all documents, communications and/or ESI concerning evaluations of Plaintiff's performance;

- **Request No. 5** – Produce all documents, communications and/or ESI concerning the reasons for Plaintiff's termination;

- **Request No. 37** – Produce all documents, communications and/or ESI concerning any communications regarding, or contemplation of, Plaintiff's termination before she was notified of her termination;

- **Request No. 43** – Produce all documents, communications and/or ESI concerning Ms. Ferro's continued medical treatment and symptoms as referenced in paragraph 55 of the Complaint.

*See generally* Plaintiff's First Request for the Production of Documents to All Defendants (the "RFPs"), attached hereto as **Exhibit 2**. And so on.

In the Employee Subpoenas, Ferro defines DHCP as inclusive of the company's "agents, representatives, trustees, officers, directors, employees, partners, predecessors, successors, subsidiaries, parents, and affiliates." *Id*. at 6. Accordingly, relevant communications from each of the subpoenaed employees are likely already within the universe of documents to be produced to Ferro by the Defendants. Moreover, these communications would by necessity have occurred between DHCP employees within the scope of their respective employment responsibilities and would not invade the privacy interests of non-parties solely to duplicate efforts already underway by Defendants in this matter.

**3.  The Employee Subpoenas seek irrelevant information.**

In any event, the communications sought by Ferro through the Employee Subpoenas are ultimately irrelevant to the claims or defenses at issue. *See* Fed. R. Civ. P. 26(b)(1). To succeed on her claim for FMLA retaliation, Ferro must prove that DHCP and/or R. Perez intentionally discriminated against her in the form of an adverse employment action for her having exercised an FMLA right. *See Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001). None of the categories of electronic communications sought by Ferro in the Employee Subpoenas are relevant to any of the elements of this claim.

For starters, none of the employees from whom Ferro seeks documents have anything to do with DHCP's FMLA leave regimen. In the DHCP Employee Handbook, employees seeking FMLA leave are directed to "give 30 days' prior written notice, or as much notice as

possible, to [their] supervisor." *See* DHCP Employee Handbook at 39, attached hereto as **Exhibit 3**.[4] Ferro's supervisor was, at all times during her employment, R. Perez. Indeed, the only DHCP employee Ferro even alleges she provided any notice of her need for FMLA leave is R. Perez. *See* Am. Compl. at ¶ 48. Indeed, other than Dr. Prieto, no other DHCP employee is even referenced in the Amended Complaint. Accordingly, the *only* individual whose communications are relevant to Ferro's alleged need for FMLA leave is R. Perez, a defendant who has already been served with discovery seeking such information.

Moreover, Ferro's claims of FMLA retaliation are centered on two purported adverse employment events: (1) Ferro's receipt of the lowest COVID-19 payment of any DHCP employee at her level, and (2) Ferro's termination in June 2020. But again, none of the subpoenaed employees had any authority whatsoever with respect to decisions made regarding Ferro's employment. As Ferro's direct supervisor, only R. Perez had the authority to reduce her pay or terminate her employment. And again, Ferro has requested documents related to these decisions in her written discovery served on the Defendants. Whether or not the subpoenaed employees had discussions related to Ferro betwixt themselves, their colleagues, or other individuals outside of the DHCP umbrella is utterly immaterial to the COVID-19 payment made to Ferro or her termination. Accordingly, the Employee Subpoenas seek information beyond that permitted by Rules 26 and 45 and should be quashed.

**C.   CONCLUSION**

For the forgoing reasons, Defendants request that this Court enter an order quashing

---

[4] As shown in the attached Employee Handbook executed by Ferro, she was aware of and agreed to abide by the policies within the handbook, including those related to FMLA leave. *See* DHCP Employee Handbook at 57.

Plaintiff's Rule 45 subpoenas directed to Daniel Perez, Janelle Perez, Martin Perez, Andres Prieto, MD, and Elba Reyes or enter a protective order regarding same.

### CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Southern District of Florida Local Rule 7.1(a)(3), the undersigned conferred with counsel for Plaintiff via telephone on March 26, 2021. Plaintiff does not agree to the relief requested within this Motion.

Dated: March 26, 2021.                    Respectfully submitted,

/s/ Eric S. Boos
Daniel B. Rogers
drogers@shb.com
Florida Bar No.: 195634
Eric S. Boos
eboos@shb.com
Florida Bar No.: 0107673
SHOOK, HARDY & BACON L.L.P.
201 S. Biscayne Blvd., Suite 3200
Miami, Florida 33131
Telephone: 305.358.5171

*Counsel for Defendants Doctors HealthCare Plans, Inc. and Rafael Perez*

4846-3628-6946