# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-cv-23449-BLOOM/Louis**


JULIE FERRO,

              Plaintiff,

    v.

DOCTORS HEALTHCARE PLANS,
INC.,

              Defendant.

_____/


**[PROPOSED] COURT'S INSTRUCTIONS TO THE JURY**

## Instruction No. 1

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

2

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence don't

3

permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

· the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

· the witness's memory;

· the witness's manner while testifying;

· any interest the witness has in the outcome of the case;

4

· any bias or prejudice the witness may have;

· any other evidence that contradicts the witness's testimony;

· the reasonableness of the witness's testimony in light of all the evidence; and

· any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, Julie Ferro, claims the Defendant, Doctors HealthCare Plans, discriminated against her by terminating her employment because she has a disability. Doctors HealthCare Plans denies that Ms. Ferro has a disability and contends that it did not terminate her employment because of her disability, but because of her poor performance that culminated in her making an unauthorized settlement offer and lying about it when confronted.

Burden of proof:

Ms. Ferro has the burden of proving her case by what the law calls a "preponderance of the evidence." That means Ms. Ferro must prove that, in light of all the evidence, what she claims is more likely true than not. So, if you could put the evidence favoring Ms. Ferro and the evidence favoring Doctors HealthCare Plans on opposite sides of balancing scales, Ms. Ferro

5

needs to make the scales tip to her side. If Ms. Ferro fails to meet this burden, you must find in favor of Doctors HealthCare Plans.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," Doctors HealthCare Plans has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Doctors HealthCare Plans must prove for any affirmative defense. After considering all the evidence, if you decide that Doctors HealthCare Plans has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

6

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone

else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

<u>Course of the trial</u>:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Ms. Ferro will present her witnesses and ask them questions. After Ms. Ferro questions the witness, Doctors HealthCare Plans may ask the witness questions – this is called "cross-examining" the witness. Then Doctors HealthCare Plans will present its witnesses, and Ms. Ferro may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

<u>Citation</u>: Eleventh Circuit Pattern Jury Instructions 1.1 (General Preliminary Instruction)

**Instruction No. 2**

Sometimes a party has the burden of proving a claim or defense by clear and convincing evidence. This is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain. The court will tell you when to apply this standard.

<u>Citation</u>: Eleventh Circuit Pattern Jury Instructions 1.2 (Burden of Proof – Clear and Convincing Evidence)

## Instruction No. 3

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

11

Here are several important things to keep in mind about your questions

for the witnesses:

- · First, you must submit all questions in writing. Please don't ask any questions aloud.

- · Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

- · Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

<u>Citation</u>: Eleventh Circuit Pattern Jury Instructions 1.4 (Jury Questions)

**Instruction No. 4**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

<u>Citation</u>: Eleventh Circuit Pattern Jury Instructions 2.1 (Stipulations)

**Instruction No. 5**

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

<u>Citation</u>: Eleventh Circuit Pattern Jury Instructions 3.1 (Introduction)

**Instruction No. 6**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

<u>Citation</u>: Eleventh Circuit Pattern Jury Instructions 3.2.2 (The Duty to Follow Instructions – Corporate Party Involved)

**Instruction No. 7**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

16

<u>Citation</u>: Eleventh Circuit Pattern Jury Instructions 3.3 (Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court)

**Instruction No. 8**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

Citation: Eleventh Circuit Pattern Jury Instructions 3.4 (Credibility of Witnesses)

18

**Instruction No. 9**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Citation: Eleventh Circuit Pattern Jury Instructions 3.5.1 (Impeachment of Witnesses Because of Inconsistent Statements)

**Instruction No. 10**

In this case, it is the responsibility of Ms. Ferro, the party bringing the claim against Doctors HealthCare Plans, to prove every essential part of her claim by either a "preponderance of the evidence" or "clear and convincing evidence." This is sometimes called the "burden of proof" or the "burden of persuasion." I will instruct you when to use the preponderance of the evidence standard and when to use the clear and convincing evidence standard.

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Ms. Ferro's claim is more likely true than not true.

"Clear and convincing evidence" is a higher standard of proof than proof by a "preponderance of the evidence." It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain.

If the proof fails to establish any essential part of a claim or contention by the burden of proof that applies to that part of the claim or contention, you should find against Ms. Ferro on that part of the claim or contention.

In deciding whether any fact has been proved by a preponderance of the evidence or clear and convincing evidence, you may consider the testimony of

all of the witnesses, regardless of who may have called them, and all of the

exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Ms. Ferro's claim by

the burden of proof that applies to that claim or part of that claim, you should

find for Doctors HealthCare Plans as to that claim.

Citation: Modified version of Eleventh Circuit Pattern Jury Instructions 3.7.1
(Responsibility for Proof – Plaintiff's Claim– Preponderance of the Evidence);
Eleventh Circuit Pattern Jury Instructions 1.2 (Burden of Proof – Clear and
Convincing Evidence)

**Instruction No. 11**

In this case, Doctors HealthCare Plans asserts the affirmative defense of mitigation of damages. Even if the Ms. Ferro proves her claim for damages by a preponderance of the evidence, Doctors HealthCare Plans can limit the amount of damages Ms. Ferro may recover on her claim if it proves this affirmative defense by a preponderance of the evidence.

I caution you that Doctors HealthCare Plans does not have to disprove Ms. Ferro's claim, but if Doctors HealthCare Plans raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

<u>Citation</u>: Eleventh Circuit Pattern Jury Instructions 3.7.2 (Responsibility for Proof – Affirmative Defense Preponderance of the Evidence)

22

**Instruction No. 12**

In this case, Ms. Ferro claims that Doctors HealthCare Plans discriminated against Ms. Ferro by terminating her employment because she had a "disability" within the meaning of the Americans with Disabilities Act (the ADA) and the Florida Civil Rights Act (the FCRA). Since the ADA and FCRA are substantially the same, I refer to them collectively as the disability laws.

Doctors HealthCare Plans denies Ms. Ferro's claim and asserts that it did not terminate Ms. Ferro's employment because of her disability but for legitimate reasons, *including Ms. Ferro's poor performance that culminated in her making an unauthorized settlement offer*.  Doctors HealthCare Plans also asserts [*that Ms. Ferro engaged in wrongdoing or misconduct during her employment, which was of such severity that if then known by Doctors HealthCare Plans would have resulted in her termination*] [an after-acquired affirmative-defense based on alleged wrongdoing or misconduct that was not discovered until XXX date].

Under the disability laws, if a person is qualified to do the job, it is unlawful for an employer to terminate a person's employment because of that person's disability.

To succeed on her claim, Ms. Ferro must prove all the following facts by a preponderance of the evidence:

**First**:   Ms. Ferro had a disability;

**Second**: Ms. Ferro was a qualified individual;

**Third**:  Doctors HealthCare Plans terminated Ms. Ferro's employment; and

**Fourth**: Doctors HealthCare Plans took that action because of Ms. Ferro's disability.

In the verdict form that I will explain to you in a moment, you will be asked to answer questions about these factual issues.

**Definition of "Disability"**

The first element requires that Ms. Ferro prove by a preponderance of the evidence that she had a disability. A "disability" is a physical or mental impairment that substantially limits one or more major life activities.

A "physical impairment" is a condition that prevents the body from functioning normally. A "mental impairment" is a condition that prevents the mind from functioning normally.

A "major life activity" is an activity that is centrally important to everyday life, including the operation of major bodily functions. Walking, standing, lifting, bending, concentrating, sleeping and functions of the immune system are major life activities.

24

An impairment "substantially limits" a major life activity if it prevents or significantly restricts a person from performing the activity, compared to an average person in the general population. An impairment that substantially limits one major life activity is a disability even if it does not limit any other major life activity.

To decide whether Ms. Ferro's rheumatoid arthritis substantially limits her ability to walk, stand, lift, bend, concentrate, sleep or the functions of the immune system, you should consider, as compared to most people in the general population:

(a) the condition under which Ms. Ferro walks, stands, lifts, bends, concentrates, sleeps or regulates her immune system;

(b) the manner in which Ms. Ferro walks, stands, lifts, bends, concentrates, sleeps or regulates her immune system; and

(c) how long Ms. Ferro can walk, stand, lifts, bend, concentrate, sleep, or regulate her immune system.

To decide whether Ms. Ferro's rheumatoid arthritis substantially limits her ability to walk, stand, lifts, bend, concentrate, sleep, or regulate her immune system, it does not matter that her rheumatoid arthritis can be corrected by the use of medication.

If Ms. Ferro's impairment is not always a problem but flares up from time to time, that can be a disability if it would substantially limit a major life activity when active.

25

**Definition of "Qualified Individual"**

The second element requires that Ms. Ferro prove by a preponderance of the evidence that she was "qualified" for the job at the time of the challenged employment decision. This means that Ms. Ferro must show that she had the skill, experience, education, and other job-related requirements for her position as Vice President of Provider Relations for Doctors HealthCare Plans, and could do the essential functions of the job – with or without reasonable accommodation.

In this case, Ms. Ferro claims that she was able to perform the essential functions of the Vice President of Provider Relations for Doctors HealthCare Plans.  Doctors HealthCare Plans claims that Ms. Ferro was unable to perform her job *effectively in* managing and supervising the Provider Relations department and in educating and servicing the healthcare providers in Doctors HealthCare Plans' network and that these functions were essential to the position of Vice President of Provider Relations.  To the extent that Ms. Ferro claims that a particular function is not essential to the job, she must prove that the function is not essential.

The essential functions of a position are the fundamental duties of that position. The term "essential functions" does not include the

position's marginal functions. To decide whether a function is essential to a particular position, you may consider the following factors:

    (a) whether the function's performance is the reason the position exists;

    (b) whether there are a limited number of employees available to perform the function;

    (c) whether the function is highly specialized so that an employee in the position is hired for the ability to perform the function;

    (d) Doctors HealthCare Plans' judgment about which functions are essential to the position;

    (e) written job descriptions for the position;

    (f) the amount of time an employee in the position spends performing the function;

    (g) the consequences of not requiring an employee in the position to perform the function; or

    (h) whether others who held the position were required to perform the function.

No single factor controls your decision. You should consider all the evidence to decide whether a function is essential to the job. To decide whether Ms. Ferro was qualified to perform the essential job functions, you should consider her abilities as they existed when Doctors HealthCare Plans terminated Ms. Ferro's employment.

**Definition of "Because of Plaintiff's Disability"**

Finally, if you find that Ms. Ferro had a "disability," was a "qualified individual," and that Doctors HealthCare Plans terminated her employment, you must decide whether Doctors HealthCare Plans took that action "because of" Ms. Ferro's disability. Put another way, you must decide whether Ms. Ferro's disability was the main reason for Doctors HealthCare Plans' decision.

To determine that Doctors HealthCare Plans terminated Ms. Ferro's employment because of Ms. Ferro's disability, you must decide that Doctors HealthCare Plans would not have terminated her employment if Ms. Ferro had not had a disability but everything else had been the same.

Doctors HealthCare Plans denies that it terminated Ms. Ferro's employment because of her disability and claims that it made the decision for other reasons.

An employer may not discriminate against an employee because of the employee's disability, but an employer may terminate an employee for any other reason, good or bad, fair or unfair. If you believe Doctors HealthCare Plans' reasons for its decision and find that its decision was not because of Ms. Ferro's disability, you must not second guess that

decision, and you must not substitute your own judgment for Doctors HealthCare Plans' judgment – even if you do not agree with it.

As I have explained, Ms. Ferro has the burden to prove that Doctors HealthCare Plans' decision to terminate her employment was because of Ms. Ferro's disability. I have explained to you that evidence can be direct or circumstantial. To decide whether Doctors HealthCare Plans' decision to terminate Ms. Ferro's employment was because of Ms. Ferro's disability, you may consider the circumstances of Doctors HealthCare Plans' decision. For example, you may consider whether you believe the reasons Doctors HealthCare Plans gave for the decision. If you do not believe the reasons it gave for the decision, you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true discriminatory reason for the decision.

If you find that Ms. Ferro has proved each of the elements she must prove, you must decide the issue of her compensatory damages.

When considering the issue of Ms. Ferro's compensatory damages, you should determine what amount, if any, has been proven by Ms. Ferro by a preponderance of the evidence as full, just and reasonable compensation for all of Ms. Ferro's damages as a result of the termination of her employment, no more and no less. Compensatory

damages are not allowed as a punishment and must not be imposed or increased to penalize Doctors HealthCare Plans. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Ms. Ferro has proved them by a preponderance of the evidence, and no others:

(a) net lost wages and benefits from the date of the date of termination to the date of your verdict; and

(b) emotional pain and mental anguish.

To determine the amount of Ms. Ferro's net lost wages and benefits, you should consider evidence of the actual wages she lost and the monetary value of any benefits she lost.

As a defense to Ms. Ferro's damages claim for Doctors HealthCare Plans' decision to terminate Ms. Ferro's employment, Doctors HealthCare Plans claims that Ms. Ferro engaged in wrongdoing or misconduct during her employment, which was of such severity that if then known by Doctors HealthCare Plans would have resulted in her termination. <u>Doctors HealthCare Plan alleges that it learned of this wrongdoing or misconduct that would have resulted in Ms. Ferro's termination on XX date.</u>

If the preponderance of the evidence supports Doctors HealthCare Plans' claim that Ms. Ferro engaged in wrongdoing or misconduct that Doctors HealthCare Plans' decision-maker did not discover until after it terminated Ms. Ferro's employment, you should reduce any damages for lost wages and benefits that you award to Ms. Ferro and calculate the total amount of her damages for lost wages and benefits from date of unlawful termination to the date Doctors HealthCare Plans' decision-maker discovered the wrongdoing or misconduct **on XX date**.

Ms. Ferro's wrongful conduct must have been of such severity that she in fact would have been terminated on those grounds alone if Doctors HealthCare Plans' decision-maker had known of it at the time of the termination.

**If, however, the preponderance of the evidence does not support Doctors HealthCare Plan's claim that Ms. Ferro engaged in wrongdoing or misconduct that was discovered after her termination, then your verdict should be for Ms. Ferro in the total amount of her damages for lost wages and benefits.**

To determine whether and how much Ms. Ferro should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury – tangible and intangible. Ms. Ferro does

31

not have to introduce evidence of a monetary value for intangible things like mental anguish. You must determine what amount will fairly compensate her for those claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Ms. Ferro to be reasonably diligent in seeking substantially equivalent employment to the position she held with Doctors HealthCare Plans. To prove that Ms. Ferro failed to mitigate damages, Doctors HealthCare Plans must prove by a preponderance of the evidence that: (1) work comparable to the position Ms. Ferro held with Doctors HealthCare Plans was available, and (2) Ms. Ferro did not make reasonably diligent efforts to obtain it. If, however, Doctors HealthCare Plans shows that Ms. Ferro did not make reasonable efforts to obtain any work, then Doctors HealthCare Plans does not have to prove that comparable work was available.

If you find that Doctors HealthCare Plans proved by a preponderance of the evidence that Ms. Ferro failed to mitigate damages, then you should reduce the amount of Ms. Ferro's damages by the

32

amount that could have been reasonably realized if Ms. Ferro had taken advantage of an opportunity for substantially equivalent employment.

Ms. Ferro also asks you to award punitive damages. The purpose of punitive damages is not to compensate Ms. Ferro but, instead, to punish Doctors HealthCare Plans for wrongful conduct and to deter similar wrongful conduct. You will only reach the issue of punitive damages if you find for Ms. Ferro and award her compensatory damages.

To be entitled to an award of punitive damages, Ms. Ferro must prove that Doctors HealthCare Plans acted with either malice or with reckless indifference toward Ms. Ferro's protected rights. Specifically, Ms. Ferro must show that an employee of Doctors HealthCare Plans, acting in a managerial capacity, either acted with malice or with reckless indifference to Ms. Ferro's federally protected rights.

There is no bright-line rule about which employees act in a managerial capacity. You must determine whether an employee acted in a "managerial capacity" based upon the type of authority Doctors HealthCare Plans gave the employee and the amount of discretion that the employee has in what is done and how it is accomplished.

To show that Doctors HealthCare Plans acted with malice, Ms. Ferro must show that an employee acting in a managerial capacity knew

that federal law prohibits discrimination and discriminated against Ms. Ferro anyway. To show that Doctors HealthCare Plans acted with reckless indifference to Ms. Ferro's federally protected rights, Ms. Ferro must show that an employee acting in a managerial capacity acted with serious disregard for whether the conduct violated federal law. Either malice or reckless indifference is sufficient to entitle Ms. Ferro to an award of punitive damages; Ms. Ferro need not prove both.

An employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where the managerial employees' acts are contrary to the employer's good faith efforts to comply with the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace. However, the mere existence of policies prohibiting discrimination does not preclude punitive damages if the policies are ineffective.

There is no single factor that determines whether Doctors HealthCare Plans acted with malice or with reckless indifference to Ms. Ferro's federally protected rights. In determining whether to award punitive damages, you may consider factors such as: (1) whether Doctors HealthCare Plans engaged in a pattern of discrimination toward its employees; (2) whether Doctors HealthCare Plans acted spitefully or

34

malevolently; (3) whether Doctors HealthCare Plans showed a blatant disregard for civil legal obligations; (4) whether Doctors HealthCare Plans failed to investigate reports of discrimination; (5) whether Doctors HealthCare Plans failed to take corrective action concerning discriminatory acts or comments by its employees; and (6) whether the person accused of discrimination was included in the employer's decision making process concerning Ms. Ferro's termination.

If you find that punitive damages should be assessed against Doctors HealthCare Plans, you are to decide the amount of punitive damages, if any, to be assessed as punishment against Doctors HealthCare Plans and as a deterrent to others. This amount would be in addition to the compensatory damages, if any, you may decide to award. In making this determination, you should decide any disputed factual issues by the preponderance of the evidence.

In determining the amount of punitive damages, if any, to be assessed, you should consider the following:

1. the nature, extent and degree of misconduct and the related circumstances, including the following:

      A. whether the wrongful conduct was motivated solely by unreasonable financial gain;

    B. whether the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct, was actually known by Doctors HealthCare Plans;

    C. whether, at the time of the termination of Ms. Ferro's employment, Doctors HealthCare Plans had a specific intent to harm Ms. Ferro and the conduct of Doctors HealthCare Plans did in fact harm Ms. Ferro, and

    2. *evidence regarding* Doctors HealthCare Plans' financial resources.

You may in your discretion decline to assess punitive damages.

    The burdens of proof that Ms. Ferro must satisfy for her claim for punitive damages are different under the different disability laws.  Under the ADA, Ms. Ferro's burden is to prove by the preponderance of the evidence that punitive damages should be assessed against Doctors HealthCare Plans.  Under the FCRA, Ms. Ferro's burden is to prove by clear and convincing evidence that punitive damages should be assessed against Doctors HealthCare Plans.   The clear and convincing evidence standard is higher than the preponderance of the evidence standard. The

**verdict form will ask whether punitive damages should be assessed under either standard.**

<u>Citation</u>: Eleventh Circuit Pattern Jury Instructions 4.11 (Americans with Disabilities Act – Disparate-Treatment Claim – 42 U.S.C. §§ 12101-12117); Fla. Std. Jury Instr. (Civil) 417.11 (Affirmative Defense – After-Acquired Evidence) & 503.2(c) (Punitive Damages – Non-Bifurcated Procedure)

**Instruction 13**

Of course, the fact that I have given you instructions concerning the issue of Ms. Ferro's damages should not be interpreted in any way as an indication that I believe that Ms. Ferro should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

You have been permitted to take notes during the trial. You must use your notes only as an aid to your memory during deliberations. You must not give your notes greater weight than your memories or impressions about the testimony.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts.

Your only interest is to seek the truth from the evidence in the case.

<u>Citation</u>: Eleventh Circuit Pattern Jury Instructions 3.8.1 (Duty to Deliberate When Only the Plaintiff Claims Damages); Modified version of note-taking instruction in Eleventh Circuit Pattern Jury Instructions 1.1 (General Preliminary Instructions, Note Taking)

**Instruction No. 14**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

<span style="background-color: yellow">[Explain verdict]</span>

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

<u>Citation</u>: Eleventh Circuit Pattern Jury Instructions 3.9 (Election of Foreperson Explanation of Verdict Form)